FREEDMAN AND LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
IDENTIFICATION NO.: 22954
1601 Market Street, Second Floor
Philadelphia, PA 19103
(216) 925-8400
Attorneys for Plaintiff

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT REVAK and MARGARET REVAK,<br>    Plaintiffs<br>v.<br>INTERFOREST TERMINAL UMEA AB<br>   and<br>WAGENBORG SHIPPING B.V.,<br>    Defendants | CIVIL ACTION<br><br>NO. 03-4822 |

**PLAINTIFFS' MOTION IN LIMINE TO
PRECLUDE EVIDENCE OF ALCOHOL CONSUMPTION BY
PLAINTIFF ROBERT REVAK**

Plaintiffs Robert and Margaret Revak, by their attorneys, Stanley B. Gruber, Esquire and Freedman & Lorry, P.C., move to preclude any evidence of alcohol consumption by Plaintiff Robert Revak and in support thereof aver as follows:

1. Plaintiffs, Robert and Margaret Revak, seek damages from Defendants Interforest Terminal Umea AB ("Interforest") and Wagenborg Shipping BV ("Wagenborg") as a result of personal injuries suffered by Mr. Revak on September 8, 2002, while employed as a longshoreman assisting in the discharge of units of lumber from the M/V "Morraborg", a vessel owned by Wagenborg, which was berthed at Pier 80 in the Port of Philadelphia. The units of lumber had been stowed aboard the "Morraborg" by Interforest, a Swedish Stevedore, in August 2002, while the ship was berthed at Interforest's shipping terminal in Holmsund, Sweden.

2.  There is absolutely no evidence in the Record developed during extensive discovery that the Plaintiff Robert Revak had consumed any alcoholic beverages on the day of the accident, September 8, 2002, or that the consumption of alcoholic beverages played any part whatsoever in contributing to his injuries.

3.  Nonetheless, it is apparent from the reports of two of Defendants' proposed medical experts, that such experts intend to make reference to an incident prior to September 8, 2002 and two incidents subsequent to September 8, 2002 when Mr. Revak consumed alcoholic beverages. Based on the content of the defense medical experts' reports, it would also appear that defense counsel will ask Mr. Revak about such incidents on cross-examination.

4.  The two defense medical experts in question are Neurologist David G. Cook, M.D., and Neuropsychologist, Thomas Sacchetti, Ph.D. The specific references to Mr. Revak's consumption of alcoholic beverages contained in the reports of those physicians can be itemized as follows:

    a.  <u>David G. Cook, M.D.</u>[1]

        i.  At Page 3 of his report, Dr. Cook states that "the records which I reviewed make mention of an episode of head and neck injury which transpired in 1994 when he was intoxicated."

        ii.  The first paragraph of Page 4 of Dr. Cook's report states:

> "During my history taking he mentioned an episode of falling on returning from a bathroom after he had 'a couple of beers'. The record from Jefferson suggests that on December 30, 2003, he had a witnessed fall with loss of consciousness, being amnestic to events after having fallen from a standing position after drinking six beers. A laceration was noted. An episode of syncope after drinking was also reported in January 2005 despite the fact that he reported to me abstinence from alcohol for 2-3 years."

        iii.  At Page 5 of his report, Dr. Cook states "I also am concerned about his history of alcohol use, given the two episodes, at least, of alcohol use that might have lead to injury."

---

[1] Dr. Cook's report is appended hereto as Exhibit 1.

    b.    **Thomas Sacchetti, Ph.D.**[2]

        i. At Page 2 of his report, Dr. Sacchetti notes that Mr. Revak "denies drug or alcohol abuse problems or mental health issues".

        ii. At Page 6 of his report, Dr. Sacchetti states:

"On 12-30-03, Mr. Revak was seen at Methodist ER. He was a 66 year old at a bar who had '8-6 beers' and who fell from a standing position. The fall was witnessed by the son. He sustained a loss of consciousness and he was amnestic."

        iii. At Page 6 of his report, Dr. Sacchetti also notes:

"Methodist Hospital records of 4-3-94 indicate that Mr. Revak was a 56 year old intoxicated male who staggered upstairs and fell 3-4 feet onto his chest and head. He did not have loss of consciousness but remained on the floor".

        iv. At Page 7 of his report, Dr. Sacchetti states:

"In my interview, Mr. Revak was not forthcoming about his alcohol usage, and intoxication is found in several medical records both before and after the incident in question. Both incidents involve significant blows to the head, i.e. falling from a standing position and falling downstairs."

        v. Finally, at Page 7 of his report, Dr. Sacchetti concludes:

"I generally found Mr. Revak to be pleasant but less than fully forthcoming regarding his alcohol history. It is well-known that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short-term memory, especially with advancing age."

5. Between Dr. Cook and Dr. Sacchetti, they reference three incidents between 1994 and 2005 where Mr. Revak's consumption of alcoholic beverages was noted in a medical record. Those incidents are as follows:

    a. On April 3, 1994, approximately 8½ years before the accident here in question, Mr. Revak was seen at the Thomas Jefferson University Emergency Department. The intake form stated that he was a 56 year old intoxicated male whose family reported that he had

---

[2] Dr. Sacchetti's report is appended hereto as Exhibit 2.

staggered upstairs and fell three to four feet onto his chest/head. A copy of the Jefferson Emergency records relating to the April 3, 1994 incident is appended hereto as Exhibit 3.

    b.    The second incident occurred on December 30, 2003 – almost 10 years after the 1994 incident and 14 months after the accident here in question. The ER record from Thomas Jefferson University Hospital for that incident is appended hereto as Exhibit 4. The ER notes indicate that Mr. Revak had 5-6 beers and that he fell from a standing position, lacerating his chin.

    c.    The third incident occurred two years later on January 1, 2005. The Jefferson Emergency records are appended hereto as Exhibit 5. The ER records indicate that Mr. Revak had a few drinks, stood up and fainted. A small laceration on the right forehead was noted.

6.    Dr. Sacchetti's conclusion "that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short-term memory, especially with advancing age" should be stricken for the following reasons:

    a.    Dr. Sacchetti has not demonstrated that Mr. Revak is a person with a "history of heavy alcohol intake";

    b.    Three incidents of consumption of alcohol taking place over an 11 year period cannot be considered "a history of heavy alcohol intake" and Dr. Sacchetti does not specifically ascribe such a history to Mr. Revak;

    c.    Dr. Sacchetti, as a neuropsychologist, has not demonstrated the qualifications required to issue such an opinion; and

    d.    The prejudicial effect of making reference to heavy alcohol intake and alcohol-associated problems far outweighs any minimal probative value that this statement may have. F.R.E. 403.

7.  Whether or not Mr. Revak consumed alcohol 8 ½ years before the accident on April 3, 1994, 14 months after the accident on December 30, 2003, or 26 months after the accident on January 1, 2005, has no relevance to any issue involved in this case and, accordingly, such evidence of alcohol consumption should be excluded pursuant to F. R. E. 401.

8.  Even if evidence of alcohol consumption on the three dates in question is found to have some relevance to any issue involved in this case, such evidence should be excluded pursuant to F.R.E. 403, since its probative value is far outweighed by the danger of unfair prejudice.

WHEREFORE, it is respectfully requested, that this Court enter the attached Order precluding any evidence of alcohol consumption by the Plaintiff Robert Revak at the trial of this case.

Respectfully submitted

FREEDMAN AND LORRY, P.C.


By:_____/S/_____
    STANLEY B. GRUBER
    Attorneys for Plaintiffs

5