FREEDMAN AND LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
IDENTIFICATION NO.: 22954
1601 Market Street, Second Floor
Philadelphia, PA 19103
(216) 925-8400
Attorneys for Plaintiff

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT REVAK and<br>MARGARET REVAK,<br>    Plaintiffs<br>    v.<br><br>INTERFOREST TERMINAL<br>UMEA AB<br><br>    and<br><br>WAGENBORG SHIPPING B.V.,<br>    Defendants | CIVIL ACTION<br><br><br><br>NO. 03-4822 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY REGARDING ALCOHOL CONSUMPTION BY THE PLAINTIFF ROBERT REVAK**

**I.    STATEMENT**

Plaintiffs, Robert and Margaret Revak, seek damages from Defendants Interforest Terminal Umea AB ("Interforest") and Wagenborg Shipping BV ("Wagenborg") as a result of personal injuries suffered by Mr. Revak on September 8, 2002, while employed as a longshoreman assisting in the discharge of units of lumber from the M/V "Morraborg", a vessel owned by Wagenborg, which was berthed at Pier 80 in the Port of Philadelphia. The units of lumber had been stowed aboard the "Morraborg" by Interforest, a Swedish Stevedore, in August 2002, while the ship was berthed at Interforest's shipping terminal in Holmsund, Sweden.

There is absolutely no evidence that the Plaintiff Robert Revak had consumed alcoholic beverages on the day of the accident, September 8, 2002, or that the consumption of alcoholic beverages put any part whatsoever in contributing to his injuries.

Nonetheless, it is apparent from the reports of Defendants' three proposed medical experts, that each such expert intends to make reference to an incident prior to September 8, 2002 and two incidents subsequent to September 8, 2002 when Mr. Revak consumed alcoholic beverages. Based on the content of the defense medical experts' reports, it would also appear that defense counsel will ask Mr. Revak about such incidents on cross-examination.

The two of the defense medical experts are Neurologist David G. Cook, M.D., and Neuropsychologist, Thomas Sacchetti, Ph.D. These specific references to Mr. Revak consumption of alcoholic beverages contained in the reports of those physicians can be itemized as follows:

    a.    **David G. Cook, M.D.**[1]

        i. At Page 3 of his report, Dr. Cook states that "the records which I reviewed make mention of an episode of head and neck injury which transpired in 1994 when he was intoxicated."

        ii. The first paragraph of Page 4 of Dr. Cook's report states:

> "During my history taking he mentioned an episode of falling on returning from a bathroom after he had 'a couple of beers'. The record from Jefferson suggests that on December 30, 2003, he had a witnessed fall with loss of consciousness, being amnestic to events after having fallen from a standing position after drinking six beers. A laceration was noted. An episode of syncope after drinking was also reported in January 2005 despite the fact that he reported to me abstinence from alcohol for 2-3 years."

        iii. At Page 5 of his report, Dr. Cook states "I also am concerned about his history of alcohol use, given the two episodes, at least, of alcohol use that might have lead to injury."

    b.    **Thomas Sacchetti, Ph.D.**[2]

---

[1] Dr. Cook's report is appended hereto as Exhibit 1.
[2] Dr. Sacchetti's report is appended hereto as Exhibit 2.

2

      i. At Page 2 of his report, Dr. Sacchetti notes that Mr. Revak "denies drug or alcohol abuse problems or mental health issues".

      ii. At Page 6 of his report, Dr. Sacchetti states:

"On 12-30-03, Mr. Revak was seen at Methodist ER. He was a 66 year old at a bar who had '8-6 beers' and who feel from a standing position. The fall was witnessed by the son. He sustained a loss of consciousness and he was amnestic."

      iii. At Page 6 of his report, Dr. Sacchetti also notes:

"Methodist Hospital records of 4-3-94 indicate that Mr. Revak was a 56 year old intoxicated male who staggered upstairs and fell 3-4 feet onto his chest and head. He did not have loss of consciousness but remained on the floor".

      iv. At Page 7 of his report, Dr. Sacchetti states:

"In my interview, Mr. Revak was not forthcoming about his alcohol usage, and intoxication is found in several medical records both before and after the incident in question. Both incidents involve significant blows to the head, i.e. falling from a standing position and falling downstairs."

      v. Finally, at Page 7 of his report, Dr. Sacchetti concludes:

"I generally found Mr. Revak to be pleasant but less than fully forthcoming regarding his alcohol history. It is well-known that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short-term memory, especially with advancing age."

Between Dr. Cook and Dr. Sacchetti, they reference three incidents between 1994 and 2005 where Mr. Revak's consumption of alcoholic beverages was noted in a medical record. Those incidents are as follows:

    a. On April 3, 1994, approximately 8½ years before the accident herein question, Mr. Revak was seen at the Thomas Jefferson University Emergency Department. The intake form reported that he was a 56 year old intoxicated male whose family reported that he had staggered upstairs and fell three to four feet onto his chest/head. A copy of the Jefferson Emergency records relating to the April 3, 1994 incident is appended hereto as Exhibit 3.

3

   b. The second incident occurred on December 30, 2003 – almost 10 years after the 1994 incident and 14 months after the accident herein question. The emergency department record from Thomas Jefferson University Hospital for that incident is appended hereto as Exhibit 4. The ER notes indicate that Mr. Revak had 5-6 beers and that he fell from a standing position, lacerating his chin.

   c. The third incident occurred two years later on January 1, 2005. The Jefferson Emergency records are appended hereto as Exhibit 5. The ER records indicate that Mr. Revak had "a few drinks, stood up and fainted. A small laceration on the right forehead was noted.

## II. ARGUMENT

It appears that Defendants will attempt to offer testimony at the trial of this case from their medical experts David G. Cook, M.D., a neurologist and Thomas Sacchetti, Ph.D., a neuropsychologist, indicating that Mr. Revak consumed alcohol and may have been intoxicated on April 3, 1994, December 30, 2003 and January 1, 2005. The date of the accident in this case is September 8, 2002 and there has been no evidence introduced throughout the course of discovery in this case to suggest that Mr. Revak had consumed any alcohol on the day of his accident – or that, indeed, alcohol consumption played any role whatsoever in the happening of the accident. Accordingly, any evidence of alcohol consumption by Mr. Revak 8½ years before the accident or one or three years after the accident has no relevance to the issue of liability in this case.[3]

With respect to the issue of damages involved in this case, neither Dr. Cook nor Dr. Sacchetti have offered any opinion respecting alcohol consumption by Mr. Revak, that meets the test of "reliability" set forth in <u>Daubert v. Merrill Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Thus, the

---

[3] F.R.E. 401 defines the term "Relevant Evidence" as follows:

> " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

4

only opinion offered by Dr. Cook with respect to alcohol use is set forth at Page 6 of his report (Exhibit 1) in which Dr. Cook simply states:

> "I am also concerned about his history of alcohol use, given the two episodes, at least, of alcohol use that might have lead to injury."

Dr. Cook does not indicate what "injury" to which he is referring. Although Dr. Cook expresses "concern" he fails to specify how any alcohol use by Mr. Revak has contributed to or affected the injuries that Mr. Revak sustained as a result of the accident of September 8, 2002. Accordingly, Dr. Cook's conjecture that "alcohol use…might have led to" some "injury" fails to meet the test of relevance set forth in Rule 401, or the requirements of "reliability" and "fit" found in F.R.E. 702.

The opinions offered by Dr. Sacchetti make the following reference to alcohol use by Mr. Revak:

    a.    At Page 7 Dr. Sacchetti states:

> "In my interview, Mr. Revak was not forthcoming about his alcohol usage, and intoxication is found in several medical records both before and after the incident in question. Both incidents involve significant blows to the head, i.e., falling from a standing position and falling down stairs…"

    b.    Dr. Sacchetti also notes at Page 7 of his report:

> "I generally found Mr. Revak to be pleasant but less than fully forthcoming regarding his alcohol history. It is well-known that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short-term memory especially with advancing age."

The only reference in Dr.Sacchetti's report to what Mr. Revak told him about alcohol use is at page 2, where the Doctor notes that Mr. Revak denied "alcohol abuse problems". Accordingly, Dr. Sacchetti's conclusion that "Mr. Revak was not forthcoming about his alcohol usage" is neither accurate nor relevant to any issues involved in this case. Nowhere does Dr. Sacchetti suggest or explain how three incidents of alcohol consumption over an 11 year period would rise to the level of alcohol abuse. Nor does he indicate how reference to intoxication in several medical records both

5

before and after the incident in question has any bearing on the issue of the extent of Mr. Revak's injuries.

Again, Dr. Sacchetti's conclusion later on Page 7 of his report that Mr. Revak was "less than fully forthcoming regarding his alcohol history" is not supported by Dr. Sacchetti's report and has no bearing on any issue in this case.

Dr. Sacchetti's CV[4] does not demonstrate the requisite degree of expertise to qualify him to testify regarding his assertion that "individuals with a history of heavy alcohol intake can have alcohol associated short-term memory, especially with advancing age." Dr. Sacchetti fails to link his assertion to any evidence demonstrating that Mr. Revak has "a history of heavy alcohol intake" Nor does he quantify how heavy the alcohol intake must be to cause alcohol-associated problems with short-term memory.

Dr. Sacchetti's specifically states that he does not believe that Mr. Revak has "any organically based residual deficits in brain functioning related to the incident of 9-8-02". However, he does not opine that Mr. Revak is suffering from such deficits as a result of alcohol consumption.

Even assuming that the references to alcohol consumption contained in Dr. Cook and Dr Sacchetti's reports have some relevance to the issues in this case, the probative value of such evidence in this case is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…" and, accordingly, such evidence should be excluded pursuant to F.R.E. 403.[5]

This Court has recognized that evidence of alcohol consumption can be extremely prejudicial to a plaintiff especially when, as here, such evidence has limited, if any, probative value on the issues in the case. Utz v. Johnson, 204 U.S. Dist. LEXIS 24906 (Ed. Pa. 2004).

---

[4] A copy of Dr. Sacchetti's CV is appended hereto as Exhibit 6.
[5] F.R.E. 403 provides:

> "Although relevant, evidence may be excluded if it's probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

6

Precluding evidence of alcohol consumption by Mr. Revak before or after the accident in question would not preclude Defendants from making reference to the head injuries, such as they were, sustained in 1994, 2003 or 2005. Counsel for Plaintiff would then have the opportunity to cross-examine the doctors on the extent and severity of such head injuries, without having to confront any highly prejudicial or inflammatory reference to alcohol consumption.

### III. CONCLUSION

For all the foregoing reasons it is respectfully submitted that an Order should issue precluding Defendants from offering any evidence of alcohol consumption by Mr. Revak at the trial of this case.

Respectfully submitted

FREEDMAN AND LORRY, P.C.


By: _____/S/_____
STANLEY B. GRUBER
Attorneys for Plaintiffs