**THOMAS SWIRSKY SACCHETTI, Ph.D.**
1518 WALNUT STREET
SUITE 1110
PHILADELPHIA, PA 19102

<u>Licensed Psychologist</u>
Diplomate in Clinical Neuropsychology/ABPP

<u>Tel.</u> (215) 731-9033
Fax (215) 731-9503

December 26, 2006

John T. Donovan, Esquire
Rawle & Henderson
The Widener Building
One South Penn Square
Philadelphia, PA 19107

Re: **Robert Revak**

Dear Mr. Donovan:

Thank you for referring Robert Revak for neuropsychological evaluation, which was conducted on 10-6-06. He was accompanied for the clinical interview by Veronica Golden, a paralegal from his attorney's office. This testing was requested to determine the nature and extent of any residual deficits in neuropsychological functioning resulting from an accident that occurred on 9-8-02. Mr. Revak reported that he was turning a large draft of lumber, i.e. 3 gross, in order to guide it into a doorway when the sling holding the lumber broke. He was reportedly hit in the head and down his left side. He reported that the draft was about 3 feet off the ground, approximately chest high, when the sling broke. He reported a loss of consciousness from one half to one hour long. His last memory was of pushing away from it when he saw it coming down, and his next recall was of being on the ground and seeing EMT personnel. He was aware of bleeding from his left leg and his head. He was taken to Jefferson Hospital.

Mr. Revak has several current problems that he feels are related to this accident. He reports neck pain, left arm weakness and pins/needles, a bruise on his left thigh/hip, numbness in his left leg just below the knee, sharp pain in his left ankle when pivoting, right posterior low back pain especially with long walking, occasional pain on the left side of his stomach, a hernia attributed to physical therapy/lifting weights, and loss of balance/tendency to veer off to the left. Upon direct questioning regarding cognitive functioning, he reported "a little bit" of memory problem. Upon direct questioning

Robert Revak
Page 2 of 8

regarding emotional functioning, he reports that he is managing well. He likes to keep busy, e.g. taking things apart and re-assembling them, going out, keeping active.

Mr. Revak reports that his prior health was "perfect". He fractured ribs over 10 years ago when he was hit by a big draft at work, and was completely healed from this injury. He reports a bruised hip and back from an accident 12 years ago when he was knocked down by a truck. He denies head injury and reported that he was completely healed from this injury. He reports no history of prior head injury or loss of consciousness. He denies drug or alcohol abuse problems or mental health issues. He denied the use of any regular prescription medication in the past, and now he only occasionally takes aspirin. He reports that he is able to generally sleep through the night (7-8 hours) and that he uses a few pillows to avoid pain, for which he occasionally takes aspirin.

Mr. Revak was born and raised in Philadelphia, the oldest of three siblings. One brother drowned at 9. His father died when Mr. Revak was 3 years of age of "hardening of the arteries", although his father was only in his 40's at the time. His mother died of "natural causes" in her 60's about 10 years ago. Mr. Revak reported that he was born "upside down", but that he had no birth or early developmental problems thereafter. He reports being a fair student with no learning disabilities. He reportedly graduated Bishop Neumann High School with a 70 average. Mr. Revak then worked at Kardon Box Co. for 18 years, where he was a foreman. When the company moved, he became a longshoreman and he was working in this capacity at the time of the accident. He has been in this position for 31 years. He hasn't been back to work since the accident.

Mr. Revak has been married for over 50 years. He has three children, ages 50 through 43. His oldest son works with him and was the one who told him that he was unconscious for ½ to 1 hour.

TESTS ADMINISTERED

WAIS-III, WMS-III, WRAT-3, COWAT, BNT, Finger Oscillation, Grooved Pegboard, Luria motor tasks, Stroop, WCST, CVLT, Rey CFT, TOMM, Ruff 2 & 7, Trails A & B, TPT, MCMI-III


ANALYSIS OF TEST DATA

Mr. Revak was pleasant and cooperative throughout the lengthy testing session. He scored in the low average range of overall intelligence, with a Full Scale WAIS-III IQ=81. This places him at the 10%ile in terms of overall intellectual functioning. There was a slight superiority of non-verbal problem solving (POI=97) over verbal reasoning and problem solving (VCI=78). Among the verbal subtests, Mr. Revak was low average on abstract verbal reasoning, mental arithmetic problem solving, and common sense

Robert Revak
Page 3 of 8

reasoning. His expressive word knowledge, auditory attention span, fund of information, and auditory sequencing/working memory were all in the borderline range. Among the non-verbal tasks, his eye for missing detail and his visuo-analytic problem solving skills were average. Rapid visual discrimination, visual sequencing, and non-verbal abstract problem solving skills were low average. He was borderline on a task requiring speed and new learning.

Mr. Revak's auditory attention for strings of digits was borderline. Sustained visual attention was at the 32%ile for speed and at the 55%ile for accuracy. His immediate recall of short passages presented aurally was borderline, but his delayed recall was average. His immediate recall of faces was impaired, but his delayed recall was low average. His immediate recall of geometric designs was high average and his delayed recall was superior for this material. Verbal list learning was high average with good retention over time. Incidental visual recall of a complex design that he initially copied was impaired. However, his copy of the design was also impaired. Mr. Revak passed one test designed to assess issues of insufficient effort and secondary gain, but his performance on another test of effort was marginal.

Mr. Revak was logical and goal-directed in expressive speech; no dysarthria or word retrieval problems were noted in conversational speech. His reading of individual words was at the 1%ile (2nd grade level). His spelling was at the 4%ile (2nd grade level). Written arithmetic was a relative strength in basic academic skills, falling at the 53%ile or 6th grade level. Verbal fluency under timed conditions was at the 47%ile for phonemic cueing and at the 25%ile for semantic cueing. Confrontation naming was low average. Mr. Revak understood all that was requested of him throughout the day, and receptive language skills were judged to be intact.

Mr. Revak has mixed hand dominance. Although he writes with his left, he prefers his right for most other activities. Normal dominant to non-dominant hand relationships may therefore not be applicable to Mr. Revak. His right hand motor sequencing speed and endurance was mildly impaired, at the 9%ile. His left hand speed was at the 30%ile. Fine motor dexterity was mildly impaired bilaterally. Mr. Revak was slow on thumb-finger sequential touch bilaterally. He has problems with right-left orientation. He had impaired complex motor regulatory skills, oral practic sequencing skills, and motor inhibitory skills.

Mr. Revak had mixed results on tasks of complex problem solving and executive functioning. On a task requiring speed and visual sequencing, he was at the 3%ile. When this task was made more difficult by the additional requirement of set shifting and simultaneous processing, he was at the 30%ile. He was low average on a complex problem solving task requiring hypothesis generation, learning from mistakes, and mental flexibility. He was average on a task requiring him to inhibit rote or overlearned skills in favor of less automatic ones. On a complex copying task requiring visuo-spatial planning and visuo-motor organization, he was mildly impaired. On a complex tactile motor problem solving task requiring him while blindfolded to place various shaped blocks into

Robert Revak
Page 4 of 8

a formboard of correspondingly shaped holes, his right hand performance was very impaired. Due to his pain complaints and his very poor performance with the right hand, the left hand and both hands trial of this test was not administered.

On the Beck Depression Inventory, Mr. Revak reported a mild level of depression.

RECORD REVIEW

In addition to performing the testing, I also had the opportunity to review numerous medico-legal records.

Methodist Hospital/TJUH records indicate that Mr. Revak was admitted from 9-8-02 to 9-12-02. The records initially indicate that he was hit in the back of the head with a pallet with questionable loss of consciousness. He had a 1cm frontal laceration and a bilateral pelvic fracture. His cervical spine film was significant only for degenerative disc disease. The orthopedic service was consulted, and the "final read" on the head CT was interpreted to show a questionable non-displaced occipital fracture without intracranial pathology. The trauma flow sheet indicated that the patient was crushed between a pallet and a forklift when a pallet fell on him. An unclear loss of consciousness was noted, but the patient was amnesic. Once again, a questionable loss of consciousness was noted in the ER, where diagnostic impressions included head trauma and left lower leg injury. A neurosurgery consult on 9-9-02 indicated that a wooden pallet fell on his waist and legs. A blow to the head was questionable. The CT was originally read as negative but later was interpreted to show a non-displaced occipital fracture with no intraparenchymal hemorrhaging or contusion or extraaxial fluid collection.

Mr. Revak was transferred to rehabilitation medicine on 9-12-02, and he remained in rehab until 9-20-02. The records indicate that several pallets of wood fell on his waist and legs. He was treated for non-displaced occipital fracture. On 9-16-02, an X-ray of the pelvis showed a fracture of the left pubic rami and moderate degenerative changes at the hips. An X-ray of the left ankle showed a fracture of the medial malleolus. The left shoulder and humerus studies were within normal limits. He received physical and occupational therapies. At no place in the records was I able to find any complaints of cognitive problems, nor was he treated in this regard. He was released to home.

Mr. Revak was seen at NovaCare for rehabilitation. On 5-12-03, he had an extensive evaluation, in which motor speed and dexterity were assessed with the Purdue Pegboard Test. His performance on this test was within normal limits bilaterally.

Mr. Revak saw Dr. Winokur on four occasions between 11-25-02 and 1-27-03. I saw none of Dr. Winokur's notes or reports from these visits, only handwritten consultation notes of Dr. Sher.

Dr. Bennett (4-21-03) evaluated Mr. Revak neurologically. At that time, he was complaining of lightheadedness, dizziness, and balance problems. He had

hypersensitivity of the left lower extremity. He had diminished sensation of the second and third finger of the left hand and left hand weakness. He was not taking any pain medication. He walked with a prominent wide based gait. Dr. Bennett's impressions also included limited cervical spine movement. Mr. Revak's mental status examination was near normal although he was described to be "not a precise historian". Dr. Bennett reported that the patient did not feel he was experiencing any impairment of memory, and that as cognitive complaints go, this may represent his baseline.

On 5-27-06, Dr. Mandel noted Mr. Revak's weak left hand was notable for a median distribution and sensory loss in the lower extremity included diminished position and vibratory sense. The EMG indicated a block across the carpal tunnels. The MRI of the cervical spine showed a moderate disc herniation at C6-7 with neural foraminal encroachment. An MRI of the lumbar spine showed disc dessication with mild disc height loss from L1 through S1 and multilevel degenerative disc disease.

In his deposition of 6-1-06, Mr. Revak stated that he was told by his son, who works with Mr. Revak, that Mr. Revak was underneath the lumber and that the son tried to go under with his forklift to lift the draft.

Dr. John Salvo (7-16-03) reported that Mr. Revak was capable of doing sedentary type work only. On 9-15-04, he reiterated that Mr. Revak would not return to heavy duty work. On 10-17-06, Dr. Salvo noted improved strength from last year but still significant issues. He noted that the patient's permanent impairment was directly related to the work injury and that he was unable to do any regular work. On (4-3-06), Dr. Salvo notes the patient problems with pain in the neck and left leg and weakness of the left upper extremity. He had limited motion of the cervical spine that was a little worse than two years ago. Dr. Salvo reported that Mr. Revak would not be able to return to work that involved any lifting, pushing or pulling. On

Dr. John Gordon evaluated Mr. Revak on 12-15-06, approximately one week after the current evaluation. Dr. Gordon thus did not administer the entire battery of tests, but only those that did not overlap the tests I had administered. Dr. Gordon reported particular difficulty with rapid auditory and visual information processing, immediate and incidental memory, rapid verbal facility, and constructional dyspraxia. Dr. Gordon admitted that the patient's speech and language difficulties may have pre-dated the accident. Dr. Gordon reported that the patient's motor speed and dexterity were considerably below expectation and that the left hand slowing/weakness may have been due to peripheral dysfunction. Dr. Gordon noted mild to moderate depression and a mild impairment of brain function consistent with a closed head injury.

Mr. Revak was seen at Methodist Hospital after September 2002. From 10-9-02 through 10-16-02, he was seen for rib pain and palpitations and recent dizziness. A CT of the thorax showed a mild right sided pulmonary embolus. An MRI of the cervical spine

showed a moderate central C6-7 disc herniation with foraminal encroachment. Mr. Revak was treated with Coumadin and a Heparin drip and released.

On 12-30-03, Mr. Revak was seen at Methodist ER. He was a 66 year old at a bar who had "8-6 beers" and who fell from a standing position. The fall was witnessed by the son. He sustained a loss of consciousness and he was amnestic.

Several medical records pre-dated the accident.

Pennsport Physical Therapy records of 4-3-01 indicate that Mr. Revak was injured at work when he was hit on the head by two falling wooden boards. He was knocked down and suffered a head wound. He denied loss of consciousness. His pain was 7/10 with 10 being the worst pain imaginable. He was diagnosed with cervical and thoracic-lumbar sprain.

Dr. Winokur (7-1-94) indicated that Mr. Revak had been in an MVA on 1-29-93, as a result of which he developed neck and low back pain that became progressively worse. A cervical spine film showed degenerative disc disease and degenerative arthritis at C5-6 and C6-7. The lumbar spine film showed degenerative arthritis. Dr. Kuperman, the neurologist, reportedly thought that the patient had lumbar instability and pain. An EMG and nerve conduction studies reportedly showed mild nerve root irritation at L3-4. On 11-21-94, Dr. Winokur reported that the ultimate cause of the pain was discogenic at C5-6 and C6-7 as well as a disc protrusion at L4-5 that were directly related to the MVA.

Methodist Hospital records of 4-3-94 indicate that Mr. Revak was a 56 year old intoxicated male who staggered up stairs and fell 3-4 feet onto his chest and head. He did not have loss of consciousness but remained on the floor.

SUMMARY/CONCLUSIONS

Mr. Robert Revak is a pleasant 69 year old gentleman who was involved in a work related accident on 9-8-02. It is unclear to what extent Mr. Revak sustained a direct or indirect blow to the head and the hospital records are inconsistent in this regard. Some notations report that he was hit in the back of the head by the pallet, which would have been unlikely if the pallet was 3-4 feet from the ground or "at chest level" as he reported. Another notation in the neurosurgery consult indicate that the pallet fell on his waist and legs. The issue of loss of consciousness is also unclear, in that Mr. Revak reports a ½ to 1 hour loss of consciousness whereas several medical personnel report a questionable loss of consciousness. Mr. Revak did have a small forehead laceration. He also had a questionable nondisplaced occipital fracture, and in light of medical records that show numerous other traumas to the head, it is not clear to me that the questionable fracture was definitely attributed to the incident of 9-8-02. Obviously, neuroradiology is not my field of expertise and I would defer to an expert in this area, but I have not seen an expert opinion that definitely attributes the occipital skull fracture to the 9-8-02 incident.

Robert Revak
Page 7 of 8

Regardless of the issue of loss of consciousness, Mr. Revak was apparently amnesic and was diagnosed with a head injury. I do believe that he sustained, at worst, a mild head injury. In the hospital and medical records, I was unable to find any complaints of cognitive problems or concerns of lingering cognitive problems. This suggests to me that if there were any cognitive sequelae, these problems dissipated in the immediate aftermath of the accident. In my own interview, Mr. Revak enumerated in a clear and concise fashion a number of physical complaints since the accident, but only mentions problems with short term memory upon direct questioning in this regard. This reflects that memory issues are not a big concern for him. In my interview, Mr. Revak was not forthcoming about his alcohol usage, and intoxication is found in several medical records both before and after the incident in question. Both incidents involve significant blows to the head, i.e. falling from a standing position and falling down stairs. Mr. Revak also failed to indicate another pre-accident head injury in which he was hit on the head by falling boards and knocked to the ground, suffering a head wound.

On the current testing, his overall intelligence level placed Mr. Revak at the approximate 10%ile. I do not believe that this is an underestimate of his pre-accident levels, especially in light of basic academic skills of reading and spelling which place Mr. Revak at the 2nd grade level (1%ile). I believe that Mr. Revak had a pre-existing learning disability which, in light of the era in which he was educated, may very well not have been diagnosed. However, this factor as well as his lower intellectual level definitely provides a context with which to evaluate the remaining portions of the neuropsychological battery. His delayed recall of both verbal and non-verbal material is average, and his verbal learning that also requires organization is above average. His processing speed index and his working memory index on intelligence testing are not significantly lower than his overall IQ. His frontal lobe executive functions and complex problem solving (e.g. verbal fluency under time pressure, rapid set shifting, multi-tasking, and hypothesis generation) are also commensurate with his level of intelligence, and not reflective of acquired brain dysfunction. Thus, in all of the cognitive areas that are highly sensitive to mild head injury, Mr. Revak is functioning at or above his expected level in relation to his overall intelligence.

Mr. Revak is impaired on tasks of motor speed (right hand only) and dexterity (bilaterally). I agree with Dr. Gordon that these findings likely reflect peripheral vs. brain involvement. I also noted that his fine motor dexterity when tested in physical therapy in May 2003 was within normal limits. This pattern of decreased functioning over time suggests that Mr. Revak has either deteriorating peripheral neurological problems from 2003 to present, or that Mr. Revak was not putting forth as good effort on the present motor testing as when tested previously. I generally found Mr. Revak to be pleasant but less than fully forthcoming regarding his alcohol history. It is well known that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short term memory, especially with advancing age. I do not believe that he has any organically based residual deficits in brain functioning related to the incident of 9-8-02.

Robert Revak
Page 8 of 8

These opinions are offered within a reasonable degree of neuropsychological certainty.

Sincerely,

Thomas Swirsky Sacchetti, Ph.D.
Diplomate in Clinical Neuropsychology/ABPP