IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT REVAK and MARGARET REVAK | : | CIVIL ACTION |
| | : | |
| vs. | : | No. 03-4822 |
| | : | |
| INTERFOREST TERMINAL UMBEA AB | : | |
| | : | |
| and | : | |
| | : | |
| WAGENBORG SHIPPING, B.V. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT INTERFOREST
TERMINAL UMEÅ AB'S RESPONSE ON OPPOSITION TO PLAINTIFFS'
MOTION *IN LIMINE* TO PRECLUDE OPINION TESTIMONY OF
DEFENDANT'S LIABILITY EXPERT DAVID P. POPE, PH.D.**

Defendant Interforest Terminal Umeå AB ("Interforest"), by and through its attorneys, Rawle & Henderson LLP, respectfully submits the within memorandum of law in opposition to plaintiffs' Motion *in Limine* to preclude opinion testimony of defendant's liability expert, David P. Pope, Ph.D. at trial. In support thereof, Interforest avers as follows:

**I.   FACTS**

This civil action was brought by plaintiffs Robert and Margaret Revak for personal injuries suffered by Robert Revak while working as a stevedore at Pier 80 in Philadelphia, Pennsylvania on September 8, 2002. Revak was unloading timber from the Morraborg, a vessel owned and operated by defendant Wagenborg Shipping B.V. ("Wagenborg"). Revak had been working in this capacity for years and was helping to guide down the "drafts" of timber that were being lifted by the Thackery crane operator. On one of the last "lifts" a draft of timber fell onto Revak as it was being hoisted from the ship's hold.

Interforest retained the services of David P. Pope, Ph.D. to serve as its material sciences expert who prepared a report as to the why the sling involved in the incident failed. See Dr. Pope's report and *curriculum vitae*, attached hereto as Exhibit "A." Dr. Pope is materials engineer at the University of Pennsylvania. His analysis was limited to how and when the sling failed with the emphasis on the product itself. Dr. Pope was not hired to reconstruct the accident or to opine regarding standards that may or may not govern the sling. Dr. Pope concludes in his report that the cause of the sling failure occurred during the lift itself, *i.e.*, the draft pinched the sling against a portion of the ship while it was being lifted from the ship in Philadelphia. He bases his conclusion on the fact on study of his sling itself. He concluded that the sling was not overloaded at the time of the accident as the safe working load of the two slings combined was 7480 pounds, compared to the actual weight in the draft of 5500 pounds. The fact that the breaking load was almost ten times larger than the load placed on it at the time of the accident indicates that the sling had been severely damaged prior to the accident. Additionally, Dr. Pope noted that the left side of the sling underwent considerable lateral contraction, while the right side underwent little or no contraction indicating that the right side was subjected to much smaller loads at failure than the left side. This points to the fact that a portion of the fracture resulted from the sling having been pinched between a fixed object and the load during lifting. Under such condition, the left side of the fracture was placed under very high stress while the right side bore a much smaller load, resulting in both the pinching/cutting of the sling along the 50 mm length of the fracture and the lateral contraction on the left hand side. Dr. Pope opined that given the sling was so severely damaged prior to the accident and that it failed while the load was being slightly repositioned, it is highly unlikely that it could have withstood the forces required to lift the draft out of the ship.

In other words, Dr. Pope, a respected materials engineer at the University of Pennsylvania was only asked to study the mode of sling failure. He was not retained as an accident reconstructionist nor an expert in the standards employed in sling inspection. Thus, any of plaintiffs' argument regarding Dr. Pope's analysis goes to its weight, not admissibility. Dr. Pope did not attempt to recreate the conditions in the hull or on portside. He focused on his particular expertise: the material failure. To the extent the plaintiffs' do not believe in that analysis, they can cross examine Dr. Pope.

## II.     LEGAL ARGUMENT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 2795 (1993), the U.S. Supreme Court held that under Rule 702, "the trial judge must assure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id. In Daubert, the Court's discussion was limited to a "scientific" context because of facts of that case. However, Rule 702 applies to "technical, or other specialized knowledge." In Kumho Tire Co., Ltd. v. Carmichael, 119 S.Ct. 1167, 1174 (1999), the Supreme Court further held that "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and

'other specialized' knowledge." Id. Therefore, the trial judge must act as "gatekeeper" to ensure that all expert testimony is relevant and reliable.

Rule 702 has three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. Kannankeril v. Terminix International, Inc., 128 F.3d 802, 806 (3d Cir. 1997), citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994.). With regards to the second prong: "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." In Re Paoli, 35 F.3d at 742.

Interforest's liability expert, David P. Pope, Ph.D. fulfills the first prong, and plaintiffs do not dispute this. A review of Dr. Pope's *curriculum vitae* clearly demonstrates that he is well qualified as an expert in the area of material sciences engineering.

Second, Dr. Pope's opinions regarding how the sling in question failed require scientific, technical or specialized knowledge and are based upon sufficient facts using reliable processes and techniques in formulating his opinions. Dr. Pope's conclusions are based upon a reasonable degree of engineering certainty. Contrary to plaintiffs' assertion that Dr. Pope's conclusion that the failure of the sling was due to damage sustained when it was pinched between the draft and side of the ship while being lifted out of the vessel is nothing more than a "bare assertion," (see plaintiffs' Br. at 13), Dr. Pope copiously details in his report the facts about the sling upon which his conclusions are based and the process by which he came to his conclusions. As a materials engineer, Dr. Pope's focus is the failure of the product, not how the accident occurred or the standards employed in sling inspection. For example, Dr. Pope opines that the sling was not overloaded at the time of the accident as the safe working load of the two slings combined was

7480 pounds, compared to the actual weight in the draft of 5500 pounds. The fact that the breaking load was almost ten times larger than the load placed on it at the time of the accident indicates that the sling had been severely damaged prior to the accident. Additionally, Dr. Pope noted that the left side of the sling underwent considerable lateral contraction, while the right side underwent little or no contraction indicating that the right side was subjected to much smaller loads at failure than the left side. This points to the fact that a portion of the fracture resulted from the sling having been pinched between a fixed object and the load during lifting. Under such condition, the left side of the fracture was placed under very high stress while the right side bore a much smaller load, resulting in both the pinching/cutting of the sling along the 50 mm length of the fracture and the lateral contraction on the left hand side. Dr. Pope opined that given the sling was so severely damaged prior to the accident and that it failed while the load was being slightly repositioned, it is highly unlikely that it could have withstood the forces required to lift the draft out of the ship. See Exhibit "A." Lastly, Dr. Pope's testimony clearly will assist the trier of fact in determining how the sling in question failed.

The fact that plaintiffs disagree with Dr. Pope's conclusions is not a basis for the exclusion of his conclusions. The fact that they did not choose to hire a material engineer to investigate the mode of failure is not a basis to exclude his conclusions. Instead, Dr. Pope's testimony may, therefore, be challenged by plaintiffs at trial, and the weight to be given to his testimony is for the jury to determine.

### III. CONCLUSION

For the foregoing reasons, defendant Interforest Terminal Umeå AB respectfully requests this Court enter an Order in the form attached hereto denying plaintiffs' Motion *in Limine* to

3172700-1                                  9

preclude the testimony of David P. Pope, Ph.D. at the trial of this case.

Respectfully submitted,

RAWLE & HENDERSON LLP

_____
John T. Donovan, Esquire
Attorneys for Defendant,
Interforest Terminal Umeå AB
The Widener Building
One South Penn Square
Philadelphia, PA 19107
(215) 575-4200
(215) 575-2583

Dated: 8-27-09