FREEDMAN AND LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
IDENTIFICATION NO.: 22954
1601 Market Street, Second Floor
Philadelphia, PA  19103
(216) 925-8400
Attorneys for Plaintiff

---

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT REVAK and<br>MARGARET REVAK,<br>    Plaintiffs<br>  v.<br><br>INTERFOREST TERMINAL<br>UMEA AB | CIVIL ACTION<br><br><br><br>NO. 03-4822 |

**PLAINTIFFS' ANSWER TO MOTION IN LIMINE OF DEFENDANT INTERFOREST TERMINAL UMEA AB TO PRECLUDE THE ADMISSION OF EVIDENCE OR TESTIMONY REGARDING ALLEGED SUBSEQUENT REMEDIAL MEASURES**

Plaintiffs Robert and Margaret Revak, by their attorneys, Stanley B. Gruber, Esquire and Freedman & Lorry, P.C., answers the Motion in Limine of Defendant Interforest Terminal UMEA AB ("Interforest") to preclude Plaintiffs from introducing any evidence or testimony at trial regarding alleged "subsequent remedial measures including, but not limited to, any and all evidence of the inspection, and scrapping of cargo slings following the accident of September 8, 2002," as follows:

1. Admitted.

2. Denied as stated. Units of Timber were being discharged from the M/V Morraborg by Mr. Revak's stevedore employer, J.H. Stevedoring. Mr. Revak was a longshoreman employed by J.H. Stevedoring who was assisting in the discharging process.

3. It is admitted that Mr. Revak was helping to guide down the "drafts" of timber that were being lifted out of the vessel's cargo hold and landed on the adjacent pier by a Thackery Crane Operator. The averment that Mr. Revak had been working in this capacity "for years" is vaguely worded and

impossible to answer. In any event, the extent of Mr. Revak's prior experience has no bearing on the subject of this motion.

   4.  Denied as stated. It is admitted that a draft of timber fell onto Mr. Revak when one of the cargo slings that was being used to lift the draft, tore apart, causing the draft to collapse onto Mr. Revak.

   5.  It is denied that the vessel's captain ordered the crew to inspect all of the slings that were returned to the vessel by the stevedore after discharge was completed, "as a result of the accident". This averment is based solely on the affidavit of Captain Ferdinand Bijkerk appended to Interforest's Motion in Limine.

   Paragraph 6 of that affidavit states:

> "As a result of the accident, I ordered the crew to inspect all of the slings that were returned to the vessel by the stevedore after discharge was completed. Having witnessed the accident, not wanting to take any chances with the remaining slings, I ordered the crew to segregate and scrap any slings that looked even remotely suspect. This was not a routine practice or policy of Wagenborg, but a safety measure I took directly in response to the accident."

This averment conflicts with prior deposition testimony given by Koert Kuursta, the Wagenborg employee responsible for leasing the slings in question. According to Mr. Kuursta's deposition testimony the routine practice aboard Wagenborg ships using leased slings, in connection with slings that are put back onto the ship after discharge of the cargo and before such slings are delivered back to Sweden, is for the ship's crew to count such slings and to look at the slings to see what kind of condition they are in. In such circumstances, when the crew would see slings they felt were damaged, they would set such slings aside and report same to Locatum, the lessor of the sling.[1]

Moreover, Captain Bijkerk also acknowledged at his deposition that prior to the accident, it was the regular practice for the crew of the M/V Wagenborg, when there was sufficient time, to check to see whether or not the slings were damaged, and to take such slings out of service if they were damaged.[2]

---

[1] See pages 30-33 of the transcript of the deposition of Mr. Kuursta which are appended hereto collectively as Exhibit 1.
[2] See pages 64-65 of Captain Bijkerk's deposition transcript marked collectively as Exhibit 2.

6.  Denied. The affidavit of Captain Bijkerk does not state that he acted "in an abundance of caution". Moreover, the averments of paragraph 6 conflict with the above quoted deposition testimony of Mr. Kuursta and Captain Bijkerk. The averments of paragraph 6 of Captain Bijkerk's affidavit were not the subject of testimony at Captain Bijkerk's deposition and Plaintiff's counsel should have an opportunity for cross examination o this issue. Moreover, at Mr. Kuursta's deposition, he noted that on the voyage back to Sweden following the accident, 84 slings were scrapped by the ship's crew out of 468 and that this was "an extraordinary amount of slings that were scrapped." When he was specifically asked "Do you have any idea why there is such a large number of scrapped slings on this particular voyage as compared to all the other voyages", his answer was "I have no idea."[3]

7.  Denied.

Paragraph 7 of Captain Bijkerk's affidavit states in part:

> "Given the heightened sense of awareness stemming from the accident, I **believe** the crew erred on the side of caution and segregated and scrapped an inordinately large amount of slings that otherwise may have been returned to Locatum for their inspection." (emphasis supplied)

The Captain's "belief" as to what the individual crew members did while inspecting the slings runs counter to FRE 602 which prohibits a witness from testifying to a matter of which he has no "personal knowledge".

8.  It is admitted that 84 of the 468 slings were scrapped by the crew following the accident.

9.  It is admitted that the Plaintiffs will seek to introduce evidence and testimony of the inspection and subsequent scrapping of the 84 slings.

10. Admitted.

11. Admitted.

---
[3] See page 60 of Mr. Kuursta's deposition transcript. Exhibit 1

3

12. It is denied that the inspection and scrapping of the 84 slings following Plaintiff's accident constituted a "subsequent remedial measure", or that such evidence has no relevance to Interforest's allged culpable conduct. Instead, such evidence has a "tendency to make the existence" of the facts that the slings used on the voyage in question were in defective condition prior to the voyage and that Interforest personnel did not adequately inspect such slings, more "probable than it would be without the evidence."

13. It is admitted that Rule 407 says what it says. However, it is denied that Rule 407 is applicable to the conduct of the ship's crew in inspecting and scrapping the 84 slings subsequent to the Plaintiff's accident, since such conduct did not constitute a "subsequent remedial measure" under that Rule.

14. Denied. The averments of paragraph 14 are averments of law that are denied as stated and will be dealt with in Plaintiff's Memorandum of Law in Opposition to the Motion.

15. Denied. The averments of paragraph 15 are averments of law that are denied as stated and will be dealt with in Plaintiff's Memorandum of Law in Opposition to the Motion.

16. Denied. The averments of paragraph 16 are averments of law that are denied as stated and will be dealt with in Plaintiff's Memorandum of Law in Opposition to the Motion.

17. It is denied that the inspection and subsequent scrapping of the 84 slings constituted a "subsequent remedial measure" and should be excluded at trial. It is further denied that Defendant Interforest has the requisite standing to invoke FRE 407 when the conduct sought to be excluded was not conduct of Interforest personnel, but rather conduct of personnel employed by Defendant Wagenborg..

18. The averments in paragraph 18 are denied for the reasons specified in response to paragraphs 5 through 7 of this Motion.

19. The averments of paragraph 19 are denied. The evidence in question will cause the jury to focus on the issues of whether the sling in question was defective when placed in use by Interforest for the voyage in question, and whether Interforest properly inspected such sling prior to putting it in use..

20. It is admitted that FRE 403 provides that relevant evidence may be excluded if its probative value is outweighed by the dangers of unfair prejudice, etc.

21. The averments of paragraph 21 are averments of law which are denied and will be addressed in Plaintiff's Memorandum of Law.

22. It is denied that evidence of the subsequent inspection and scrapping of 84 slings will confuse the jury and mislead them as to what the real issue is. Instead, this evidence will assist the jury in determining the overall condition of the slings that were put in service by Defendant Interforest for the voyage in question and whether or not Defendant Interforest properly inspected the slings.

23. It is denied that the evidence in question should be precluded as constituting evidence of subsequent remedial measures or because of the danger of unfair prejudice, confusion or misleading the jury outweighs any probative value of such evidence. It is averred that:

   a. The evidence in question meets the test of relevancy set forth in F.R.E. 401;

   b. The subsequent inspection of 468 slings and scrapping of 84 did not constitute a "subsequent remedial measure" within the meaning of F.R.E. 407;

   c. Rule 407 does not apply to post accident conduct taken by an entity other than the party seeking to exclude evidence of such conduct;

   d. There is insufficient factual basis to support Interforest's contention that Wagenborg's subsequent inspection and scrapping of slings was not a routine practice or policy of Wagenborg; and

   e. The probative value of the evidence in question is not **substantially** outweighed by any danger of unfair prejudice, confusion or misleading the jury.

WHEREFORE, Plaintiffs Robert and Margaret Revak respectfully request that this Court enter an Order in the form attached hereto, denying Interforest's Motion in Limine in its entirety.

Respectfully submitted,

FREEDMAN AND LORRY, P.C.

By: _____/S/_____
STANLEY B. GRUBER
Attorneys for Plaintiffs