FREEDMAN AND LORRY, P.C.
BY: STANLEY B. GRUBER, ESQUIRE
IDENTIFICATION NO.: 22954
1601 Market Street, Second Floor
Philadelphia, PA 19103
(216) 925-8400
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT REVAK and | : | CIVIL ACTION |
| MARGARET REVAK, | : | |
| Plaintiffs | : | |
| v. | : | |
| | : | NO. 03-4822 |
| INTERFOREST TERMINAL | : | |
| UMEA AB | : | |
| | : | |

**PLAINTIFFS' MEMORANDUN OF LAW IN OPPOSITION TO DEFENDANT INTERFOREST TERMINAL UMEA AB's MOTION IN LIMINE TO PRECLUDE THE ADMISSION OF EVIDENCE OR TESTIMONY REGARDING ALLEGED SUBSEQUENT REMEDIAL MEASURES**

I.   **STATEMENT**

Defendant Interforest Terminal UMEA AB ("Interforest") has filed a Motion in Limine to preclude Plaintiffs from introducing any evidence or testimony relating to the inspection and scrapping of cargo slings by the crew of the M/V Morraborg following the injuries sustained by the Plaintiff Robert Revak on September 8, 2002. A similar motion was previously filed by then Defendant Wagenborg Shipping, B.V. However, since Plaintiffs and Wagenborg have now reached a settlement of Plaintiffs' claim against Defendant Wagenborg, that motion is no longer pending.

The factual support for Interforest's contention that the inspection and scrapping of the cargo slings by the ship's crew was a "subsequent remedial measure" does not come from deposition testimony or documents produced during the discovery phase of this case. Instead, the sole factual support relied upon by Interforest is the Affidavit of Captain Ferdinand Bijkerk. Captain Bijkerk was the Master of the M/V Morraborg at all times pertinent hereto. His Affidavit was previously submitted in support of the similar motion filed by former Defendant Wagenborg.

This Memorandum of Law will demonstrate that Interforest's Motion in Limine should be denied for the following reasons:

1. The evidence in question meets the test of relevancy set forth in F.R.E. 401;

2. Even if Captain Bijkerk's Affidavit is credited in its entirety, the conduct of the ship's crew in inspecting and scrapping the cargo slings did not constitute a "subsequent remedial measure" under F.R.E. 407;

3. Even if Captain Bijkerk's Affidavit is credited in its entirety, the Motion must be denied since F.R.E. 407 does not exclude evidence of subsequent remedial measures taken by an entity which is not the moving party;

4. The averments set forth in Captain Bijkerk's Affidavit cannot be credited as binding, since they conflict with deposition testimony given by other Wagenborg personnel and by Captain Bijkerk himself; and

5. The evidence in question should not be precluded under F.R.E. 403 since its probative value clearly outweighs any danger of unfair prejudice, confusion, etc.

## II. FACTS[1]

This action arises out of serious personal injuries sustained by the Plaintiff Robert Revak while employed as a longshoreman at Pier 80 in Philadelphia, Pennsylvania on September 8, 2002. At that time, Mr. Revak was employed by J & H Stevedoring Company, a stevedoring company which had been engaged to discharge cargo of sawn timber from the M/V "Morraborg", avessel owned and operated by Wagenborg.. Mr. Revak's job was to assist in turning the drafts of timber as they were being placed on the pier in Philadelphia so that forklift trucks could move the drafts in to a nearby warehouse. As the longshoremen were discharging one of the drafts of timber from the vessel's cargo hold and onto the pier,

---

[1] The facts set forth herein are either drawn from the Decision of this Court denying Interforest's Motion for Summary Judgment, a copy of which is appended hereto as Exhibit 3, or deposition testimony cited herein.

one of the polyester slings being used to lift the draft parted, causing the draft to spill onto Mr. Revak, who was standing on the pier.

As per customary practice, the polyester slings that had been used to lift the drafts of timber in and out of the cargo hold at the time of loading and discharge, were returned to the ship following the completion of cargo operations in Philadelphia on September 8, 2002. On the return voyage, the ship's crew examined 468 slings that had been placed back on the vessel and determined that 84 of them – or 20%, were unfit for further use. According to Koert Kuursta, the Wagenborg employee responsible for acquiring the slings, this was an "extraordinary high amount of slings" needing to be discarded.[2]
By contrast, when the slings were examined by the ship's crew after the voyage immediately prior to the voyage to Philadelphia, less than 2% were determined to be unfit for use.[3]

Prior to the accident in question, it was the routine practice aboard Wagenborg ships using leased slings for the ship's crew to count and look at the slings on the return voyage to check their condition. In such circumstances, when the crew saw slings they felt were damaged, they would set such slings aside and report same to Locatum, the lessor of the slings. .[4]

Moreover, Captain Bijkerk acknowledged at his deposition that prior to the accident, it was the regular practice of the crew of the M/V "Morraborg", when there was sufficient time, to check to see whether or not the slings were damaged, and to take such slings out of service if they were damaged.[5]

### III. LEGAL ARGUMENT

#### A. The Evidence at Issue is Relevant

In its Argument in support of its Motion in Limine, Interforest appears to contend that evidence of the subsequent inspection and scrapping of 20% of the slings that Defendant Interforest had loaded onto the M/V Morraborg, is not evidence having a "tendency to make the existence of any fact that is of

---

[2] See Pages 58-59 of Mr. Kuursta's Deposition (Exh. 1).
[3] Kuursta dep. 41 (Exh.1).
[4] Kuursta dep. 30-33 ( Exh. 1).
[5] See pages 64-65 of Captain Bijkerk's deposition . (Exh. 2).

3

consequence to the determination of [the] action more or less probable than it would be without the evidence", as required by F.R.E. 401. However, the relevance of this evidence was noted by this Court at Page 11 of its Slip Opinion denying Interforest's Motion for Summary Judgment (Exh. 3). There, this Court noted in part:

> "The fact that Defendant's general practice was to inspect slings at least three times does not necessarily mean that Defendant inspected the particular sling at issue. Plaintiff points to evidence suggesting that this particular sling was not inspected or was inadequately inspected. Plaintiff's expert concluded that the edge damage and abrasive damage on the sling pre-existed the failure and would have been 'readily visible' during an inspection of the sling before the accident. (Erb Report 4). The sling was 'old and well worn' and had multiple abrasions, unravelings, and edge damage. (Id.). **Twenty percent of the slings that defendant loaded onto the Morraborg – an 'extraordinarily high amount of slings' – were determined to be unfit for use after the voyage to Philadelphia. (Kuusta Dep. 58-59.)** This evidence suggests that Defendant's inspections, if they occurred were inadequate to identify damage to the sling's that was 'readily visible'. . ." (emphasis supplied)

Clearly, the evidence in question has significant probative value on the question of whether Interforest adequately inspected the sling in question.

**B.      The Conduct in Question Did Not Constitute a "Subsequent Remedial Measure"**

Interforest argues that evidence of the subsequent inspection and scrapping of 20% of the slings by the ship's crew should be excluded pursuant to F.R.E. 407 as being a "subsequent remedial measure". F.R.E. 407 provides in its entirety:

> **"Rule 407 Subsequent Remedial Measures**
>
> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

The sole support for Interforest's contention that the subsequent inspection and scrapping of 84 slings was indeed a "subsequent remedial measure" is its contention that:

4

> "The inspection and subsequent scrapping of slings was not a routine practice or policy of Wagenborg, but was a safety measure that the Captain of the Morraborg took in an abundance of caution and directly in response to Plaintiff's accident."

The simple answer to Interforest's argument is that the inspection and subsequent scrapping of 84 slings was not a "subsequent remedial measure" precluded by Rule 407. Instead, the actions taken by the ship's crew falls into the category of a "post-accident investigation or test, conduct which is not considered to be prohibited" subsequent remedial measures. See Brazos River Authority v. G.E. Ionics, Inc., 469 F.3d 416, 430 (5th Cir. 2006); Prentiss and Carlisle Co. v. Koehring – Waterours Div. of Timberjack, Inc., 972 F.2d 6, 9 (1st Cir. 1992); Thornton v. Diamond Offshore Drilling, Inc., 2008 U.S. Dist. LEXIS 53577 (E.D. La. 2008).

As noted in Brazos, supra, at p. 430:

> "...the text of [Rule 407] 'only prohibits' evidence of ...subsequent measures,' not evidence of a party's analysis of its product. Prentiss and Carlisle Co. v. Koehring – Waterours Div. of Timberjack, Inc., 972 F.2d 6, (1st Cir. 1992). 'The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted.' This argument is persuasive, because by themselves, post-accident investigations would not make the event 'less likely to occur;' only the actual implemented changes make it so."

More recently, in Thornton v. Diamond Offshore Drilling, Inc., supra, the Court recognized:

> ". . .As discussed, supra, as courts have recognized that the admission of the results of tests and the findings of investigations conducted after an accident is consistent with Rule 407's purpose of encouraging safety improvements. The rule protects a party from having subsequent remedial measures used against it as evidence of its negligence in the first instance and thus helps to avoid the socially undesirable consequent of a party's reluctance to make safety improvements out of a fear of increased exposure to liability. But to read Rule 407 as barring test results and investigative findings altogether 'goes too far and fails to credit the social value of making available for trial what is often the best source of information.'. . ."

The evidence sought to be excluded by Interforest bears on the condition of the sling at the time they were allegedly inspected by Interforest immediately prior to the voyage in question – it does not bear on any changes made by Interforest in the manner in which it conducted inspections of slings following

5

the accident in question. Accordingly, the conduct in question does not fall within the category of a prohibited subsequent remedial measure excluded by Rule 407.

### C. The Conduct in Question is Not Covered by Rule 407 Since It Was Not Interforest Conduct

The alleged "subsequent remedial measure" that Interforest seeks to exclude consists of conduct carried out by personnel employed by Wagenborg. Significantly, no Interforest personnel were involved in the subsequent inspection and scrapping of 84 slings. Interforest does not seek to exclude evidence of its own conduct taken after the accident – but rather conduct of another entity. In short, the subsequent inspection and scrapping of 84 slings by Wagenborg personnel had nothing to do with any steps taken by Interforest in furtherance of added safety. Accordingly, this is not a case which involves Interforest being discouraged from taking remedial measures which would imply fault for the accident and resulting harm that occurred.

It is now well-settled in the Third Circuit that Rule 407 does not bar evidence of remedial measures taken by a non-party. Diehl v. Blaw-Knox, 360 F.3d 426 (3rd Cir. 2004); Sell v. Ingersoll-Moran Co., 136 Fed. Appx. 545 (3rd Cir. 2005). Accordingly, Interforest may not invoke the protection afforded by F.R.E. 407 in connection with conduct carried out by another entity.

In Diehl, the Court recognized that portion of the Advisory Committee's notes to Rule 407 which states that the Rule 'incorporates conventional doctrine which excludes evidence of subsequent remedial measures as proof an admission of fault.' 360 F.3d at p. 430.

The Diehl Court went on to note at p. 430:

> ". . .Prior to the enactment of Rule 407, conventional doctrine in the circuit was that the rule excluding evidence of repairs made after an accident was not applicable to repairs made by a non-party...The Advisory Committee's reference to 'an admission of fault' re-enforces this limitation: It hardly makes sense to speak of a party's fault being 'admitted' by someone other than the party. Furthermore, the Advisory Committee was well aware of the courts' consistent interpretation of the rule. The notes to the 1997 amendment of Rule 407 – making the rule applicable to products liability actions – cite with approval the First Circuit's opinion in Raymond v. Raymond Corp. The Court in Raymond expressly ruled that 'there is no rational for excluding third party subsequent repairs under the rule'. 938 F.2d at 1524."

6

The Court in <u>Diehl</u> recognized that the policy underlying Rule 407 "is not implicated where the evidence concerns remedial measures taken by an individual or entity that is not a party to the lawsuit..." and further observed that "it is noteworthy that each of the circuits to address this issue has concluded that Rule 407 does not apply to subsequent remedial measures taken by a non-party..." <u>Id</u>.[6]

Accordingly, Defendant Interforest is precluded from using Rule 407 as a shield with respect to post-accident conduct to which it was not a party.

D.   **There Are Disputed Issues of Fact Regarding Captain Bijkerk's Affidavit**

Relying on the averments contained in Captain Bijkerk's Affidavit, Interforest also contends that the inspection and subsequent scrapping of 84 slings "was not a routine practice or policy of Wagenborg, but, instead, was a safety measure taken in direct response to Plaintiff's accident." This assertion runs counter to deposition testimony given by Koert Kuursta, the Wagenborg employee responsibility for acquisition and leasing of the slings, as well as Captain Bijkerk himself.

According to Mr. Kuursta, the routine practice aboard Wagenborg ships carrying leased slings was for the ship's crew to count and examine the slings on the return voyage. Any slings the crew felt were damaged would be set aside.[7] In addition, Captain Bijkerk testified at deposition that it was the regular practice of the crew of the "Morraborg", prior to the accident, to check the condition of the slings on the return voyage and to take damaged slings out of service.[8]

Clearly, there are significant factual issues regarding the averment contained in Captain Bijkerk's Affidavit indicating that "this was not a routine practice or policy of Wagenborg". As indicated, there is ample evidence that such inspections were in fact routine.

Moreover, that portion of Captain Bijkerk's Affidavit (Paragraph 7) in which his states that "I **believe** the crew erred on the side of caution and segregated and scrapped an inordinately large number of

---

[6] See <u>Mehojah v. Drummondu</u>, 56 F.3d 1213, 1215 (10th Cir. 1995); <u>TLT – Babcock, Inc. v. Emerson Elec. Co.</u>, 33 F.3d 397, 400 (4th Cir. 1994); <u>Raymond v. Raymond Corp.</u>, 938 F.2d 1518, 1523-24 (1st Cir. 1991).
[7] Kuursta dep. pp. 30-33 (Exh.1)
[8] Bijkek dep. pp. 64-65 (Exh.2)

7

slings that otherwise may have been returned to Locatum for their inspection", constitutes speculation on the part of Captain Bijkerk and should be excluded pursuant to F.R.E. 602 which provides in pertinent part:

> **"Rule 602 Lack of Personal Knowledge**
>
> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter…"

According, Interforest's Motion in Limine must fail, if for no other reason than its factual underpinning does not hold water.

    E.    **The Probative Value of the Evidence in Question is not Substantially Outweighed by the Danger of Unfair Prejudice, etc.**

Finally, Interforest references F.R.E. 403 in support of its contention that even if the evidence in question is otherwise admissible, it still should be excluded since its probative value is "outweighed" by the dangers of unfair prejudice, confusion, or misleading the jury.[9] However, under F.R.E. 403, the question is whether the probative value of the evidence under attack is "substantially" outweighed by the danger of unfair prejudice, etc.

As indicated the evidence in question is highly probative on the question of whether Defendant Interforest inspected or adequately inspected the sling in question. The fact that such evidence may be harmful to Interforest, does not render it unfairly prejudicial. "Virtually all evidence is prejudicial; otherwise it would not be material. The prejudice must be unfair". See <u>Dollar v. Long Mfg., N.C., Inc.</u>, 561 F.2d 613, 618 (5th Cir. 1977).

While Interforest argues that the evidence in question "will only confuse the jury and mislead them as to what the real issue is", it offers no argument to support such conclusion. There should be no impediment to the juries considering such evidence in light of whether or not it supports a finding that Defendant Interforest did not adequately inspect the sling here in question. Clearly, the "substantial"

---

[9] See page 3 of Interforest's Memorandum of Law.

probative value of such evidence is not "substantially" outweighed by any danger of unfair prejudice, confusion or misleading the jury.

## IV.   CONCLUSION

For all the foregoing reasons, it is respectfully submitted that Interforest's Motion in Limine should be denied because:

1. The evidence in question meets the test of relevancy set forth in F.R.E. 401;

2. The subsequent inspection and scrapping of 84 slings did not constitute a "subsequent remedial measure" within the meaning of Rule 407;

3. Rule 407 does not apply to post accident conduct taken by an entity other than the party seeking to preclude evidence of such conduct;

4. There is insufficient factual basis to support Interforest's contention that Wagenborg's subsequent inspection and scrapping of sling's was not a routine practice or policy of Wagenborg; and

5. The probative value of the evidence in question is not **substantially** outweighed by any danger of unfair prejudice, confusion of the issues or misleading of the jury.

Respectfully submitted,

FREEDMAN AND LORRY, P.C.


By:_____/S/_____
      STANLEY B. GRUBER
      Attorneys for Plaintiffs

9