IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT REVAK and : | |
| MARGARET REVAK : | |
| : | CIVIL ACTION |
| v. : | |
| : | No. 03-4822 |
| INTERFOREST TERMINAL UMEA AB : | |
| and WAGENBORG SHIPPING, B.V. : | |

**SURRICK, J.**                                                             **SEPTEMBER  8 , 2009**

### MEMORANDUM

Presently before the Court is Plaintiffs' Motion *in Limine* to Preclude Evidence of Alcohol Consumption by Plaintiff Robert Revak. (Doc. No. 65.) For the following reasons, Plaintiffs' Motion will be granted.

**I.    BACKGROUND**

In 2002, Plaintiff Robert Revak ("Revak") worked as a longshoreman at the Port of Philadelphia. On September 8, 2002, Revak was injured at his job when a draft of timber fell on him as it was being unloaded from the cargo hold of the *Morraborg*, a cargo ship that had arrived in Philadelphia from Holmsund, Sweden. Revak and his wife, Margaret Revak, brought this lawsuit against Wagenborg Shipping, B.V., which owned and operated the *Morraborg*, and Interforest Terminal UMEA AB, a professional stevedore company in Holmsund. The timber had been organized into drafts in Holmsund and loaded onto the *Morraborg* by Interforest. Each draft was made up of four to five 1100 pound packages of timber. When loading the *Morraborg* in Holmsund, Interforest used polyester slings that were placed under each draft and then attached to the hook of a cargo crane. The slings remained under the drafts while the *Morraborg*

was in transit to Philadelphia.  J&H Stevedoring Company, Revak's employer, used the slings to unload the drafts.  It is undisputed that the failure of one of the slings as the *Morraborg* was being unloaded caused the accident that led to Revak's injury.

Plaintiffs sought relief from Wagenborg under Section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), and from Interforest based upon the breach of the duty of care to Revak under the general maritime law.  In May 2009, we denied motions for summary judgment filed by Wagenborg and Interforest.  *Revak v. Interforest Terminal UMEA AB*, No. 03-4822, 2009 U.S. Dist. LEXIS 75621, at *1 (E.D. Pa. May 19, 2009) (denying Interforest's motion for summary judgment); *Revak v. Interforest Terminal UMEA AB*, No. 03-4822, 2009 U.S. Dist. LEXIS 41249, at *1 (E.D. Pa. May 14, 2009) (denying Wagenborg's motion for summary judgment).  By stipulation submitted September 8, 2009, Plaintiffs dismissed Wagenborg (Doc. No. 74), leaving Interforest as the sole remaining Defendant.  Trial is scheduled for September 14, 2009.

## II.    DISCUSSION

Plaintiffs' Motion *in Limine* to preclude evidence of alcohol consumption arises out of statements contained in the reports of two of Interforest's medical experts, neurologist David G. Cook, M.D., and neuropsychologist Thomas Sacchetti, Ph.D.  (*See* Doc. No. 65-2 at 1.)  The reports refer to three times when Revak sustained injuries after consuming alcohol.  (*Id.* at 3-4; *see also* "Cook Report," Doc. No. 65, Ex. 1 at 3-5; "Sacchetti Report," Doc. No. 65, Ex. 2 at 2, 6-7.)  The first incident occurred in 1994 when Revak, who was intoxicated, fell three to four feet onto his chest and head as he was attempting to climb stairs.  (Doc. No. 65-2 at 3.)  As a result of the fall, Revak was admitted to the Thomas Jefferson University Hospital Emergency

Department.  (*Id.*; Doc. No. 65, Ex. 3.)  The second incident occurred in December 2003, about 14 months after the incident that gave rise to this lawsuit.  (Doc. No. 65-2 at 4.)  After consuming five to six beers, Revak fell from a standing position and lacerated his chin.  He was again admitted to the emergency room at Thomas Jefferson.  (*Id.*; Doc. No. 65, Ex. 4.)  The third incident occurred on New Year's Day of 2005.  (Doc. No. 65-2 at 4.)  Revak fainted after consuming "a few drinks," lacerating the right side of his forehead.  (*Id.*)  He visited the Thomas Jefferson emergency room a third time.  (*Id.*; Doc. No. 65, Ex. 5.)

     Dr. Cook refers to the three incidents in his expert report.  (Cook Report at 3-5.)  Dr. Cook notes that when he was taking Revak's history, Revak

> mentioned an episode of falling on returning from the bathroom after he had "a couple of beers."  The Record from Jefferson suggests that on December 30, 2003, he had a witnessed fall with loss of consciousness, being amnestic to events after having fallen from a standing position after drinking six beers.  A laceration was noted.  An episode of syncope after drinking was reported in January 2005 despite the fact that he reported to me abstinence from alcohol for 2-3 years.

(*Id.* at 4.)  Dr. Cook also mentions "an episode of head and neck injury which transpired in 1994 when [Revak] was intoxicated."  (*Id.* at 3.)  These events prompted Dr. Cook to state, "I . . . am concerned about [Revak's] history of alcohol use, given the two episodes, at least, of alcohol use that might have lead [sic] to injury."  (*Id.* at 5.)  Dr. Sacchetti notes the 1994 and 2003 incidents in his report.  (Sacchetti Report at 6-7.)  In his view, "Revak [was] pleasant but less than fully forthcoming regarding his alcohol history.  It is well known that individuals with a history of heavy alcohol intake can have alcohol-associated problems with short term memory, especially with advancing age."  (*Id.* at 7.)

     Plaintiffs object to any testimony that references Revak's consumption of alcohol.  Plaintiffs argue that this evidence might be offered as exculpatory evidence of the issue of

3

liability.  (*See* Doc. No. 65-2 at 2, 4.)  Plaintiffs also argue that Revak's alcohol consumption should not be used by Interforest as evidence to limit damages.  (*Id.* at 4.)  Plaintiffs challenge Interforest's use of the alcohol incidents under Federal Rule of Evidence 401 based upon relevance and under Rule 403 based upon unfair prejudice.[1]  (*Id.* at 5-6.)  Plaintiffs also challenge Dr. Sacchetti's opinions regarding Revak's alcohol consumption under Federal Rule of Evidence 702.[2]  (*Id.* at 5.)

     Preliminarily, Plaintiffs are correct that Revak's three alcohol-related incidents are not relevant to the issue of liability.  The first incident occurred in 1994, about eight and one half years before the accident, and the 2003 and 2005 incidents occurred after the accident.  None of these incidents has any bearing on what happened the day of the subject accident.  Moreover, the likelihood that reference to any of these incidents in connection with the instant accident would be unfairly prejudicial is significant.  *See* Fed. R. Evid. 403.  Interforest does not appear to contest this view.

     Interforest does contend, however, that Revak's "history of alcohol use is relevant to

---

[1] Rule 401 states: "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[2] Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

future loss of earnings," and that "[e]vidence of alcohol consumption is relevant in assessing [Revak's] life expectancy for purposes of calculating damages." (Doc. No. 73 at 2.) Interforest cites three cases from this District to support its positions: *Miller v. Consol. Rail Corp.*, No. 98-978, 1999 U.S. Dist. LEXIS 812, at *4-5 (E.D. Pa. Jan. 26, 1999); *Stramara v. Dorsey Trailers, Inc.*, No. 96-7362, 1998 U.S. Dist. LEXIS 19420, at *3 (E.D. Pa. Dec. 7, 1998); *Smith v. Southland Corp.*, 738 F. Supp. 923, 926 n.2 (E.D. Pa. 1990). These cases are inapposite.

In *Smith*, the plaintiff had a serious drinking problem that was established in the record. 738 F. Supp. at 926 (noting, among other things, that the plaintiff had been an alcoholic before the accident and that after the accident he had been "consuming on average a case of beer over a weekend and a six-pack of beer daily during the week"). The court determined that the problem was deleterious enough to the plaintiff's health to make it relevant to the jury's evaluation of the plaintiff's life expectancy. *See id.* In *Stramara*, the plaintiff had a previous methamphetamine addiction and regularly consumed alcohol, both of which were relevant to determining his life expectancy. *See Stramara*, 1998 U.S. Dist. LEXIS 19420, at *10-11. Moreover, the court permitted the defendant, which did not have an expert of its own, to question the plaintiff's expert regarding the plaintiff's substance abuse only after the defendant's counsel established a factual foundation that the plaintiff "was addicted to methamphetamine and *drank alcohol regularly, and to excess*." *Id.* at *11 (emphasis added). The court in *Miller* relied on *Smith* and *Stramara* without discussing the frequency of the plaintiff's drinking or its severity. *Miller*, 1999 U.S. Dist. LEXIS 812, at *4-5. Thus, *Miller* adds little to the analysis provided by *Smith* and *Stramara*.

In contrast to the defendants in *Smith* and *Stramara*, Interforest offers no evidence that

Revak's alcohol consumption has had any effect on his health.  Interforest points to nothing in the record that indicates that Revak consumed alcohol with sufficient frequency to decrease his life expectancy or diminish his ability to earn a living.  Indeed, neither Dr. Cook's report nor Dr. Sacchetti's report offer an opinion to either effect.  The reports merely voice concerns about three discrete events that occurred over a 14 year period; they offer no basis for concluding that the events were part of a habit or infirmity of regular excessive consumption of alcohol.

There is nothing in the record to indicate the frequency of Revak's alcohol consumption or the effect, if any, that alcohol has had on his health or ability to earn a living.  *See Keller v. Feasterville Family Health Care Ctr.*, 557 F. Supp. 2d 671, 682 (E.D. Pa. 2008) (precluding expert from testifying that the plaintiff's decedent was an alcoholic where "[n]o evidence exist[ed] suggesting decedent had such [a] condition[]").  Moreover, Interforest directs our attention to nothing in the record that an expert or a juror could rely on to conclude that alcohol has had such an effect.  Therefore, to the extent that Dr. Cook or Dr. Sacchetti purport to opine on Revak's "history of alcohol use" (*see, e.g.*, Cook Report at 6) or "alcohol usage" (*see, e.g.*, Sacchetti Report at 7), such opinions do not meet Rule 702's requirement that expert testimony be "based on sufficient facts or data" to support their conclusions.  *See* Fed. R. Evid. 702.  In addition, we conclude that any reference to alcohol consumption in relation to the three discreet incidents creates a high risk of prejudice to Plaintiffs with minimal corresponding probative value.  *See* Fed. R. Evid. 403.  *Cf. Utz v. Johnson*, No. 04-0437, 2004 U.S. Dist. LEXIS 24906, at *15 (E.D. Pa. Dec. 9, 2004) (noting that evidence of alcohol consumption can create a substantial danger of unfair prejudice).  Accordingly, all references to alcohol and intoxication contained in Dr. Cook's report, Dr. Sacchetti's report, and in the Thomas Jefferson emergency

room reports that accompany Plaintiffs' motion are excluded.  Dr. Cook and Dr. Sacchetti are precluded from testifying about Revak's use of alcohol on those occasions and from using those incidents, standing alone, to infer that Revak regularly consumed or consumes alcohol or is an alcoholic.

Dr. Cook and Dr. Sacchetti may testify about the injuries that Revak sustained as a result of the alcohol-related events to the extent that those injuries explain any maladies that Plaintiffs attribute to the instant accident.

### III.   CONCLUSION

For these reasons, Plaintiffs' Motion *in Limine* to Preclude Evidence of Alcohol Consumption will be granted.

An appropriate Order will follow.

BY THE COURT:

_____
R. Barclay Surrick, J.